UNITED STATES of America, Plaintiff,

v.

Duane Earl POPE, Defendant.

Cr. No. 443L.

United States District Court
D. Nebraska.

March 23, 1966.

Theodore L. Richling, U. S. Atty., Dist. of Nebraska, Frederic J. Coufal, Asst. U. S. Atty., Omaha, Neb., for plaintiff.

Robert B. Crosby, and Wallace M. Rudolph, Lincoln, Neb., for defendant.

VAN PELT, District Judge.

This matter is before the Court upon the application of Messrs. Robert B. Crosby and Wallace M. Rudolph for an allowance of attorneys' fees and expenses and upon the separate applications of individuals hereafter named for allowances of defense services. This was an extensive proceeding brought on by extraordinary circumstances in the case, as demonstrated by the demand on the part of the Government for the death penalty. For this reason an allowance of fees in excess of the normal statutory limits for an attorney in a felony case is just and proper. In order to delineate the circumstances necessitating the services rendered, as well as to record the Court's reasons for allowing or rejecting, as the case may be, numerous items of expense under the

Criminal Justice Act, 18 U.S.C.A. § 3006A, this opinion is being filed.

The defendant, Duane E. Pope, a twenty-two year-old Kansas youth who graduated from college in May, 1965, was indicted by a grand jury on six counts for bank robbery and murder under 18 U.S.C.A. § 2113. Three of the counts were capital offenses. In substance it was charged that on June 4, 1965, he entered the Farmers State Bank of Big Springs, Nebraska, a Federal Deposit Insurance Corporation insured institution, robbed the bank, killed three officers or employees, wounded a fourth, and took in excess of $1,500.00 from the bank. After a trial of five weeks duration, the jury returned a verdict of guilty on all six counts and, as to each of the three capital counts, determined that he should be punished by death.

Mr. Pope surrendered to the Kansas City, Missouri, police on June 11, 1965. He was returned to the District of Nebraska on June 18, 1965, and on June 25, 1965, when he first appeared in this court, Messrs. Crosby and Rudolph, members of the bar of this court, were appointed to defend him.[1] Mr. Crosby graduated from Harvard Law School in 1935, practiced law in North Platte, Nebraska, the largest city in or near the Big Springs area, for many years and, after serving as Governor of Nebraska, entered the practice of law in Lincoln, Nebraska, where he now heads one of the larger law firms of the city. Mr. Rudolph is a graduate of the University of Chicago Law School; he is a professor of law at the University of Nebraska College of law and has devoted considerable time and study to the relationship between psychiatry and the law. He is versed in this field and in the field of constitutional law.

■ On the first occasion that Mr. Pope was in court after the Criminal Justice Act became effective, this judge by formal order reappointed Messrs. Crosby and Rudolph to represent him in these proceedings, designating such appointments to commence as of that date.[2] Since August 20, 1965, Mr. Crosby has spent 141 hours in court and 427½ hours in preparation; Mr. Rudolph has spent 128 hours in court and 142½ hours in preparation. Prior to August 20, 1965, Mr. Crosby spent 1 hour in court and 112 hours in preparation while Mr. Rudolph spent 1 hour in court and 109½ hours in preparation. Parenthetically, it should be noted that the claims of counsel are based upon a court day of 5½ hours duration for each day of the trial, together with actual time spent in court when motions and other matters were heard. The claimants thus request payment for time expended in court on a minimal basis as some trial days were longer and certainly such proceedings took a greater portion of the day than indicated by the hours in trial.

■ In considering the allowance of fees to counsel the Court is confronted with the case of United States v. Thompson, 356 F.2d 216, decided by the United States Court of Appeals for the Second Circuit on December 6, 1965. It was there held that no allowance could be made to counsel in a criminal case when

---

1. Although the plan implementing the Criminal Justice Act was adopted by the Court prior to this date, it did not become effective until August 20, 1965. While provision was made therein for the appointment of more than one attorney when the case required it, as far as the Court can determine this was the first instance in which two attorneys were being appointed to represent a defendant who was financially unable to obtain counsel. It is appropriate to note in this regard that two attorneys handled the prosecution.

2. Professor Rudolph, as in the case of all the members of the faculty of the law school, was not included in the panel of attorneys established by the Court pursuant to the plan implementing the Criminal Justice Act in this district. However, the plan makes provision for such contingencies. While all selections should be from the panel designated and approved by the Court, in the interest of justice the Judge may appoint as counsel any attorney admitted to practice in this Court. Mr. Rudolph is a member of the bar of this Court.

counsel had been appointed prior to the date the plan for the district court became effective and a motion for reappointment, at the Circuit Court's invitation, was not made until the time of argument on appeal. The situation is clearly distinguishable. Counsel in the case at bar were reappointed by the district court after the Criminal Justice Act became effective. Moreover, while the result in *Thompson* may be appropriate in light of the circumstances outlined, the reasoning is not. It does not follow that, because no further order of appointment was required to authorize the attorney to represent the defendant, none could properly be made. There is nothing in the Criminal Justice Act to indicate that it was to be applied only to appointments originally made after August 20, 1965. Were it necessary to search further for substantiation of this conclusion, the legislative history of the Act reveals that the conferees agreed to the Senate version of the bill on the point that the representation provision would be effective within no more than one year from enactment. See H.R.Rep. No. 1709, 88th Cong., 2nd Sess. 7 (1964). Applicability was sought uniformly throughout the districts at the earliest practicable date.

▬ Assuming for the purposes here that a timely reappointment is necessary in those instances where a prior appointment was made, the thrust of the legislation is to relieve a little of the burden imposed on counsel by partially compensating him for the time expended in a criminal defense. This need was nationally recognized and the congressional action was commonly acclaimed. Since the Court has the power to make an appointment at any stage in the proceedings, an appointment timely made pursuant to the Act would entitle counsel to the benefits provided by the Act from that date forward. This reasoning is consistent with the purpose and the plain language of the Act. It is the conclusion of the Court that counsel, having been appointed pursuant to the Act in a timely manner, should be compensated for services rendered and reimbursed for expenses incurred after August 20, 1965. The sole question to be determined is the amount of compensation to be paid.

The defense of a criminal case in which a human life is at stake is exceptionally difficult and demanding. The writer, who practiced law for thirty-five years in Lincoln, Nebraska, before becoming a judge of this Court, was employed and took part in several murder trials in state courts personally and as a member of a partnership. The personal knowledge of how exacting and exhausting is the responsibility sharpened the Court's awareness of the burdens counsel bore. That counsel in this case measured up to that responsibility is clear by the record as I have already confirmed from the bench.

The Lincoln Bar Association has long had a minimum fee schedule for lawyers. In 1957 it provided in civil litigation in the United States District Court for $100.00 per day for preparation and $150.00 per day for trial work. In 1962–63 this schedule was changed to provide for $20.00 per hour for preparation of cases in this court. The Nebraska State Bar Association in 1958 adopted an Advisory Fee Schedule of $100.00 per day for preparation and $150.00 per day for trial work in the federal court. This schedule was modified in May, 1965, to provide an hourly minimum of $18.00 and daily minimum of $250.00 for trial work in criminal cases.

In the Lancaster County, Nebraska, murder prosecution of Charles Starkweather eight years ago, the two court-appointed counsel were allowed a fee for services totaling $7,750.00. The trial in that case took approximately two weeks.

▬ Reference is made to these fee schedules and allowances because the Court concludes that a defendant financially able to employ counsel in Lancaster County, Nebraska, would have paid from $15,000.00 to $25,000.00 for the services rendered in this case. Under these circumstances the Court concludes that it would be unreasonable to allow less compensation in this capital case than the maximum set by the Criminal

Justice Act and therefore shall allow $15.00 per hour to each counsel for the actual time spent in court and $10.00 per hour for the actual time spent in preparation. Finding that the hours claimed by each counsel are accurate and reasonable, the Court shall allow Mr. Crosby's claim for representation in the sum of $6,390.00 and Mr. Rudolph's claim for representation in the sum of $3,345.00.

The Criminal Justice Act contains the limitation that the fee to be paid an attorney shall not exceed $500.00 in a case in which one or more felonies are charged, and then provides:

"In extraordinary circumstances, payment in excess of the limits stated herein may be made if the district court certifies that such payment is necessary to provide fair compensation for protracted representation, and the amount of the excess payment is approved by the chief judge of the circuit." 18 U.S.C.A. § 3006A(d).

This Court shall certify that, extraordinary circumstances existing in this case, the payments indicated are necessary to provide fair compensation for the representation furnished.

 The items of expense claimed by counsel can be placed in the following categories: telephone, travel for investigation and interrogation of witnesses, xeroxing, meals prior to and during the trial for witnesses and the family of the defendant, and clothing furnished the defendant. In considering what is an allowable expense, the Court must ascertain whether it is "reasonably incurred." It would seem consistent with the purposes of the Act that only those expenses actually required for, as well as incurred in, defense work are reimbursable. Applying this guideline, the Court shall allow the telephone, travel and xeroxing expense in the amounts claimed. The xeroxing expense ($340.55) may seem high, but in a modern law office it is a process that serves a very useful purpose and the Court concludes that it is a reasonable expense in this case.

By the same rule, the claim for expenses incurred for meals for witnesses and for the family of the defendant is not allowable. That such expense was actually incurred is not disputed, nor is the reasonableness of the charges. However, compulsory process was issued for all witnesses requested by the defendant except Mr. Ramsey Clark, Deputy Attorney General of the United States. The witnesses present at the trial and referred to in the claim were allowed a witness fee and travel expenses, as well as a per diem allowance for subsistence when the circumstances justified it. It would in a sense be a duplication of expense to reimburse counsel for such items. The Court recognizes that such meal-time conferences were held to save the time of counsel, but such expense nonetheless falls short of satisfying the criterion that they be reasonably incurred for defense work. A fortiori, no allowance could be made for meals of any person not required as a witness by the defense.

 The items for a tie, a shirt, and a sports coat purchased for the defendant by counsel, totaling $67.40, are not allowable. The items are doubtless reasonable and counsel acted in good faith in making the expenditures. During the trial Mr. Pope was not dressed any differently than a college boy of his age with a farm background. He did not appear to be dressed as a person without financial means. The Court does not know what clothes were available to him, but it is clear that he had been attending college and had graduated only a few days before the offense with which he was charged was committed. The Court can therefore assume that clothes were available. However, the reason for the disallowance rests on the fact that arrangements ordinarily can be made with the United States Marshal to furnish personal items needed by prisoners without means, including clothing. In the first instance, therefore, the matter of furnishing proper clothing to a defendant needing them must be left to the United States Marshal. Without a showing that such items were denied and, as

a consequence, that the defendant would be prejudiced by his appearance, the expense would not appropriately come within the category of those reasonably incurred in defense work.

The next group of items submitted involves the cost of producing and typing portions of the record of the trial for defendant's counsel. At first glance, it might appear that this is a subsection (d) expense under the Criminal Justice Act, that is to say, an expense reasonably incurred in defense work. If this were the case, then as long as the expense was proper, there is no ceiling on the amount which could be allowed. However, in juxtaposition with subsection (e) of the Act, services other than counsel, a clearer understanding of coverage envisioned by subsection (d) can be gained. Without attempting to draw a hard line, what can customarily be described as out-of-pocket expenses related to the lawyer's own services are reached by subsection (d). On the other hand, when others are employed to render services necessary for an adequate defense, their costs normally come within the purview of subsection (e).

Copies of transcripts and daily copy in the appropriate circumstances unquestionably are an essential tool in defense work. This view is supported by the commentary in the Report of the Attorney General's Committee on Poverty and the Administration of Criminal Justice which, in describing the kinds of services contemplated by the provision under consideration, specified "investigatory services, the assistance of experts, *transcripts of the proceedings,* and the like." (Italics added.) See, op.cit. 40 (1963). As a matter of further guidance in these proceedings, it is also appropriate to note that the plan adopted in this district implementing the Criminal Justice Act provides that "the fact finding services contemplated by the plan are similar to, but are not necessarily the same as, the services utilized in careful police work *or required by a diligent United States Attorney.* In passing on an application for such fact finding services, the Judge

need only be satisfied that they reasonably appear to be necessary to assist counsel in his preparation and trial of his case and that the defendant is unable to pay for them." (Italics added.) The Court finds these items as within the scope of services other than counsel provided for under subsection (e) of the Act.

At the conclusion of the opening statement by defendant's counsel, the United States Attorney ordered a copy of counsel's opening statement. Upon learning of this, counsel for the defendant immediately requested the Court to order, and the Court ordered, that a copy be prepared for use by the defendant's counsel. The Court concluded and remains of the opinion that, whenever counsel for the United States orders a copy of any part of the trial proceedings, counsel for a defendant financially unable to obtain such services would be entitled, upon making application, to have a copy of the items furnished to the United States, at least so long as the expenditure does not exceed the limits provided for within the Criminal Justice Act. It will be noted in this regard that a timely request for such services was made to the Court.

During the trial the United States Attorney advised counsel for the defendant and the Court that he wanted daily copy of all of the testimony of defendant's witnesses. This necessitated the appointment of special court reporters. The Official Court Reporter working alone simply could not provide daily copy. The defendant then requested that the Court provide the defendant with daily copy of all testimony furnished the United States Attorney. Arrangements were made to appoint three additional court reporters and daily copy was furnished of the defendant's case.

The court reporting agency, Elmer Shamberg & Associates, have made a claim for services of Mr. Shamberg in the sum of $300.00, for Miss Lewis in the sum of $300.00, for Mrs. Plum in the sum of $230.50 and for two typists, Misses Foltz and Thornton, in the sums of

$172.50 and $76.00 respectively. Mr. Shamberg and Miss Lewis did most of the reporting. Mrs. Plum did some of the reporting in court and some transcribing. Their total charges run much more than the amount here claimed. They have been paid by the United States for the substantial portion of their services. An arrangement was worked out to avoid any unnecessary expense. It was in substance that the Government would be furnished the original copy at a cost of $1.75 per page and the defendant would be billed for a second copy at a cost of $.50 per page. This is the normal rate in Lincoln, Nebraska, for furnishing daily copy. Mr. Shamberg has stated to the Court that he had advanced to each of these persons, who are employees of his reporting agency, the amounts due them for which claim is made and that he will be reimbursed by them for all such advancements. This is permissible under the provisions of the Criminal Justice Act. The Court finds that the services fall within the sum of $300.00 allowable to any one person and should be allowed in the amounts claimed.

The following claims have been filed by the expert witnesses called by the defendant: Dr. Herbert C. Modlin of the Menninger Clinic at Topeka, Kansas, $753.15; Dr. John D. Baldwin, $560.00; Dr. Elianora Brassard, $450.00. Drs. Modlin and Baldwin are psychiatrists and Dr. Brassard is a psychologist. The request for these services was made in an ex parte application, as provided for in subsection (e) of the Act, and the Court entered its order authorizing counsel to obtain their services prior to time the services for which claim is made were rendered.

The United States Attorney has advised the Court that the amounts requested by the defendant's psychiatrists are greater than was paid by the United States to the psychiatrists who examined the defendant on behalf of the Government and testified as its witnesses. However, no formal objection to the amounts requested was made, nor would it be in order to do so. The Court would not subscribe to the rule that the United States Attorney's office or the Department of Justice should establish the rate of compensation to be paid a defendant's expert witnesses under the Criminal Justice Act. The standard is what is a fair and reasonable charge in the locality in which the services were rendered and the testimony is to be offered, not what the Government may pay its witnesses.

The Act provides that the compensation paid to a person for such defense services shall not exceed $300.00 exclusive of expenses reasonably incurred. Subsection (e) does not contain the provision of subsection (d), relating to payment of counsel, whereby in extraordinary circumstances a greater amount than the normal maximum can be allowed. Inasmuch as each of the expert witnesses have in this case performed services of a value in excess of the amount which it can allow, the Court concludes that an allowance of the maximum amount of $300.00 for each witness is only just and should be made.

Claims have been made for the services of expert witnesses who examined and tested the gun used in the offense committed. Although the defendant admitted the slayings and testified in that manner on the witness stand, counsel in preparing the defense exercised proper judgment in requesting that the weapon be examined and fired. It is contemplated by the Act that counsel should be afforded the fullest opportunity to prepare their case. The rule in allowing defense services is that the Judge need only be satisfied that they reasonably appear to be necessary to *assist* counsel in their preparation, not that the defense would be defective without such testimony. Timely application having been made for this defense service, which is within the scope of subsection (e), the claim is allowable.

The defense in this case was well prepared and well presented. The allowances herein are not adequate even though they represent the maximum allowable for the services. It stands in this case as a tribute to the two lawyers here ap-

pointed that they willingly accepted and faithfully bore this heavy assignment knowing that they could not be adequately compensated. The Court again commends Messrs. Crosby and Rudolph for rendering legal services of the highest quality and for demonstrating the finest tradition of the bar.

An order for allowances has been entered accordingly, and the amounts have been approved by Chief Judge, Charles J. Vogel, United States Court of Appeals, Eighth Circuit.