**UNITED STATES of America**

v.

**Louis M. URSINI, Jr.**

**Crim. No. 11972.**

United States District Court
D. Connecticut.

Dec. 30, 1968.

See also 402 F.2d 821; 276 F.Supp. 993; 296 F.Supp. 1152.

---

4. At least the Court of Appeals has so held. United States v. Capaldo, 402 F.2d 821, 825 (2 Cir. 1968).

**1156**

---

TIMBERS, Chief Judge.

Thomas D. Clifford, Esq., a member of the bar of this Court, has filed a claim for compensation in amount of $1730, plus $28 expenses, in connection with his representing Louis M. Ursini in the District Court in the above entitled action which involved a 14 day trial and which resulted in the imposition of a 24 year sentence of imprisonment upon Ursini for armed bank robbery.

For the reasons stated below, I believe that this case qualifies under the "extraordinary circumstances" and "protracted representation" provisions of the statute. Accordingly, subject to approval by the Chief Judge of this Circuit * of the amount of compensation in excess of the statutory limit of $500, I approve the application in total amount of $1758 ($1730 compensation, plus $28 expenses).

### FINDINGS OF FACT

(1) Ursini was charged, together with a co-defendant, Richard Anthony Capaldo,[1] in a three count indictment returned by a grand jury in the District of Connecticut on April 12, 1967 with robbing the Oakville Office of the Waterbury Savings Bank in violation of 18 U.S.C. §§ 2113(a), 2113(b) and 2113(d).

(2) On April 13, 1967, the day after the indictment was returned, Mr. Clifford was appointed to represent Ursini pursuant to the Criminal Justice Act, 18 U.S.C. § 3006 A(b), and he continued to represent Ursini throughout proceedings in the District Court.

(3) After Ursini pleaded not guilty on April 24, 1967, comprehensive motions were filed on his behalf, were argued at length on May 8 and 15, 1967 and were decided shortly thereafter.

(4) The trial began on September 13, 1967 and was concluded on October 4, 1967. It occupied 14 trial days before the undersigned. Both defendants were convicted by the jury on all counts.

(5) Following presentence investigations and reports, both defendants were sentenced on November 6, 1967 upon their convictions under count three of the indictment which charged armed bank robbery. 18 U.S.C. § 2113(d). Ursini was sentenced to a term of 24 years imprisonment and was fined $10,-000. Capaldo was sentenced to a term of 22 years imprisonment and was fined $10,000. The sentence of imprisonment in the case of each defendant was imposed under 18 U.S.C. § 4208(a) (2). Imposition of sentence under counts one and two of the indictment was suspended as to each defendant.

(6) Both defendants filed notices of appeal and were granted leave to appeal in forma pauperis. Ursini stipulated for dismissal of his appeal on May 14, 1968 before briefs were filed. Capaldo's conviction was unanimously affirmed on October 7, 1968. Supra note 1.

---

\* Chief Judge Lumbard on January 7, 1969 approved this application in the full amount of $1758.

I. For a more complete statement of the facts and claims arising from the trial than is believed necessary on the instant application, see United States v. Capaldo,

402 F.2d 821 (2 Cir. 1968) (conviction of co-defendant Capaldo affirmed); United States v. Ursini and Capaldo, 276 F.Supp. 993 (D.Conn.1967) (bail pending appeal denied as to both defendants); United States v. Ursini, 296 F.Supp. 1152 (D. Conn.1968) (Ursini's fourth motion for reduction of sentence denied).

(7) The evidence at trial established that defendants held up the Oakville Bank at gunpoint one week before Christmas in 1963. Ursini was armed with an automatic pistol, Capaldo with a sawed-off shotgun. Under threat of being killed, four lady bank tellers were forced to turn over to defendants some $20,000, most of which has never been recovered. Defendants herded the four tellers to the rear of the bank at gunpoint, forced them to lie down, and then defendants escaped. Both defendants had taken great pains to disguise and conceal their identities. Ursini was dressed as a woman, including a blond wig and heavy make-up.

(8) The evidence against Ursini was mainly the eye witness testimony of three of the four lady bank tellers who, with varying degrees of positiveness, identified Ursini as the robber disguised as a woman who held up the bank at gunpoint. There also was evidence that two days before the bank robbery Ursini had accompanied a friend to a beauty salon where Ursini's wife had worked; Ursini's friend borrowed a blond wig similar to the one worn by the robber disguised as a woman on the day of the bank robbery; the borrowed wig was left by Ursini's friend in his room in a boarding house where Ursini worked, to which room Ursini had access; the wig subsequently was discovered to be missing from the boarding house room, Ursini's friend having disclaimed any knowledge of its disappearance and not having seen it again until it was in the hands of the police. Ursini did not testify at the trial.

(9) The foregoing capsule summary of some of the evidence as against Ursini indicates that his court appointed counsel had a task of substantial proportions cut out for him in preparing to defend and in actually defending at trial. Such evidence, in my view as the presiding judge, reflects at least one facet of a case of "extraordinary circumstances".

(10) Mr. Clifford's application shows that he devoted to the case 38 hours of out-of-court time in preparation and 90 hours of court time. His court time includes 14 trial days, plus portions of 4 additional days when he was in court for such matters as plea, motions and sentence. As the presiding judge who handled this case throughout, I can certify of my own knowledge that there is not the slightest padding of time allocations in Mr. Clifford's application; in fact, knowing as I do first hand of his painstaking preparation and his attendance at numerous extraordinarily long court sessions during the trial, I am satisfied that his time allocations are certainly conservative—indeed, modest.

(11) Aside from the time devoted to the case, there are other factors [2] which

2. The Connecticut Plan under the Criminal Justice Act (adopted by the District Court on February 15, 1965, approved by the Circuit Council on May 12, 1965) provides in relevant part (Section VII, pp. 14–15):

"In extraordinary circumstances, payments may be made in excess of the limits stated for compensation for representing a defendant before a commissioner and the Court, if the latter certifies that such payment is necessary to provide fair compensation for protracted representation and if the amount of the excess payment is approved by the chief judge of the circuit.

Each claim for compensation and reimbursement in connection with proceedings before a commissioner and the Court shall be submitted to the latter in writing, using the appropriate form provided by the Administrative Office of the United States Courts. Such claim shall specify the time expended, services rendered, expenses incurred and sufficient additional detailed information to enable the Court to fix a fair and reasonable fee, within the statutory limits, based upon such recognized criteria as: *the character of work required; responsibilities involved; special problems and difficulties encountered; manner in which duties were performed; knowledge, skill and judgment required of and used by counsel; professional standing of counsel as reflected by length of time at the bar, experience acquired and reputation established; any extraordinary pressure of time or other factors under which services were*

in my judgment should be taken into account by the trial court in certifying what "payment is necessary to provide fair compensation for protracted representation". 18 U.S.C. § 3006 A (d). Mr. Clifford is a lawyer who has had considerable trial experience. He is a partner in the New Haven firm of Jacobs, Jacobs, Grudberg & Clifford which is recognized as one of the outstanding law firms in Connecticut. This firm has handled—with notable success—some of the most important litigation in the federal courts, trial and appellate, since I have been on the bench. Mr. Clifford, as a key member of this firm, necessarily was immobilized from handling the firm's business for many weeks during the trial and preparation for trial of the instant case. He brought to this case, and particularly to his representation of Ursini, extensive experience as a trial lawyer and a professional reputation of the highest order. He exercised extraordinary knowledge, skill and judgment throughout.

(12) Above all, however, the most important factor, which in my judgment is highly relevant to a determination of what "payment is necessary to provide fair compensation for protracted representation" by Mr. Clifford in the instant case, is that he not only did not waste time, but on the contrary he conserved time. His conduct at every stage of the proceedings—perhaps most notably in his cross examinations and arguments to the jury as well as to the Court—was characterized by brevity and conciseness, without ever sacrificing any essential right or interest of his client. Anyone familiar with the record in this case will appreciate the somewhat unique problems with which the trial judge was beset throughout the trial. Mr. Clifford's leavening influence in the case, aside from his economical use of time, resulted in a saving of many, many hours—perhaps days—of trial time.

## CONCLUSIONS OF LAW

(1) This case qualifies under the "extraordinary circumstances" and "protracted representation" provisions of the Criminal Justice Act. 18 U.S.C. § 3006 A (d).

(2) This being such a case, the Court certifies that payment to Thomas D. Clifford, Esq. of total compensation in amount of $1730, plus $28 expenses, is necessary to provide fair compensation for protracted representation. 18 U.S.C. § 3006 A (d).

(3) The foregoing certification is subject to approval by the Chief Judge of this Circuit of the amount of compensation in excess of the statutory limit of $500. 18 U.S.C. § 3006 A (d).

## OPINION

There would appear to be little doubt that this case qualifies under the "extraordinary circumstances" and "protracted representation" provisions of 18 U.S.C. § 3006 A (d) as construed by the Chief Judge of this Circuit.[3]

The only real question presented by this application is whether allowance of compensation in excess of the statutory limit of $500 at the full hourly rates is "necessary to provide fair compensation for protracted representation" in this particular case. I think it is.

---

rendered; results achieved; and any other circumstances which appear in the case and are relevant and material to a determination of a fair and reasonable fee." (Emphasis added)

See Judicial Perspectives On The Operation Of The Criminal Justice Act Of 1964, 42 N.Y.U.L.Rev. 55, 63 (1967).

3. Compare United States v. Dodge (Application of Krieger), 260 F.Supp. 929 (S.D.N.Y.1966) (excess compensation allowed for 113 hours of court time and 48 hours of out-of-court time), with United States v. Dodge. (Application of Schweller), Criminal No. 64–619, S.D.N.Y., March 30, 1966 (excess compensation denied for 21½ hours of court time and 50 hours of out-of-court time); United States v. Whitney (Application of Mitchell), Criminal No. 65–160, S.D.N.Y., March 30, 1966 (excess compensation denied for 34¼ hours of court time and 18 hours of out-of-court time).

First, there is judicial authority for such allowance. The amount allowed in the instant case closely approximates that allowed in United States v. Dodge (Application of Krieger), supra note 3 ($1800 for 17 court days, or 113 hours of court time, and 48 hours of out-of-court time), especially when there is taken into account the substantial time conserved by Mr. Clifford in the instant case and that the instant case can hardly be said to be "an ordinary felony case", Id. at 929. Moreover, in United States v. Pope, 251 F.Supp. 234 (D.Neb.1966), in which defendant was charged with armed bank robbery that resulted in the death of three bank officers, two court appointed attorneys [4] were allowed $6,390 and $3,345, respectively, at the full hourly rates of $15 per hour for court time and $10 per hour for out-of-court time; Chief Judge Vogel of the Court of Appeals for the Eighth Circuit approved the allowance. Id. at 242.

Second, the allowance approved by the Court in the instant case is believed to be consonant with the strict concern of the courts for the proper administration of appropriated funds under the Criminal Justice Act. Cf. United States v. Thompson, 356 F.2d 216, 227 n. 12 (2 Cir. 1965), cert. denied, 384 U.S. 964 (1966). Congressional intent that funds appropriated under the Act be allowed to counsel only strictly in accordance with the provisions of the Act will be fully implemented here, in my judgment, especially in view of Mr. Clifford's economical use of time and the resultant overall saving of trial time by his conduct in the case.

Third, encouragement of economical use of time by counsel in a case such as the instant one is believed very definitely to be in the public interest and, accordingly, an application as fair and reasonable as that of Mr. Clifford should not be whittled away [5] by the District Court, especially when the Court believes, as it does here, that its allowance is "necessary to provide fair compensation for protracted representation."

In short, upon the facts of this case, I believe that Mr. Clifford's application as allowed by the District Court is supported by judicial authority, is consonant with the intent of Congress and is in the public interest.

## ORDER

ORDERED as follows:

(1) That the application of Thomas D. Clifford, Esq. in total amount of $1758 ($1730 compensation, plus $28 expenses) be, and the same hereby is, approved by the undersigned, subject to approval by the Chief Judge of this Circuit of the amount of compensation in excess of the statutory limit of $500.

(2) That the Clerk of this Court be, and he hereby is, directed to transmit to the Chief Judge of this Circuit (i) a certified copy of this Memorandum of Decision and Order; (ii) the original of Mr. Clifford's voucher (CJA Form 4); and (iii) the original and three copies of the order approving excess compensation (CJA Form 5) which has been signed by the undersigned and which is to be submitted to the Chief Judge of this Circuit for his approval.

---

4. Of course, the instant case not being a capital case, there is no issue as to more than one attorney having been appointed to represent a single defendant.

5. Cf. In Re Polycast Corporation, 289 F. Supp. 712, 718–19 (D.Conn.1968). Reference to this case is not intended to imply that the standards applicable to Chapter X fee applications are applicable under the Criminal Justice Act.