154

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NATTIE PERRY and WILBERT WATSON, Defendants.

Supreme Court, New York County.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROBERT WILLIAMS, Defendant.

Supreme Court, Kings County,
February 21, 1967.

BOTEIN, P. J. (App. Div., 1st Dept.) and BELDOCK, P. J. (App. Div., 2d Dept.): Each of us has received an application in his capacity as Presiding Justice for "approval, disapproval or modification" of allowances of compensation to counsel assigned to represent indigent defendants in criminal cases. These applications seek allowances in excess of the limits provided for in section 722-b of the County Law because of "extraordinary circumstances"; and they have been approved by Judges of the trial courts. Since these are the first of such applications submitted for our consideration, it seems advisable that in disposing of them some discussion of the statutory and policy considera-

tions which have affected our ultimate conclusions would be helpful in providing guidelines for courts and counsel in the processing of similar applications in the future.

Section 722-b of article 18-B of the County Law[1] provides for compensation to counsel assigned to defend those unable to retain private representation. Under section 722-b, counsel who are assigned in accordance with a plan of the city's Bar Associations[2] are to be paid at a rate not exceeding $15 per hour for time spent in court and $10 per hour for time reasonably spent out of court. The section further establishes a maximum compensation of $1,500 for the defense of a crime punishable by death ($2,000 if more than one attorney is assigned); $500 for the defense of one or more felonies; and $300 for the defense of one or more other crimes or for representation upon a *coram nobis* hearing. However, " in extraordinary circumstances " the trial court, which fixes compensation, " may provide for compensation in excess of the foregoing limits."

The plan of the Bar Associations, drawn pursuant to section 722, amplifies the above language somewhat, by providing for compensation in excess of the limits of section 722-b " because of extraordinary circumstances, and in order to provide for compensation for protracted representation." Moreover, the plan (Art. VI, § 3) directs that any such application approved by the trial court must then be forwarded to the Presiding Justice of the appropriate Appellate Division for his " approval, disapproval or modification ".

## Legislative History

Article 18-B of the County Law was prepared by the New York State Department of Law, and, apparently, was enacted without committee hearings or reports. However, the provisions of the statute relating to the compensation of assigned counsel were modeled on the similar provisions contained in the Federal Criminal Justice Act of 1964.[3]

Indeed, the CJA sets forth the same per hour rates as does section 722-b, imposes the same maximum compensation limits of $500 for felonies and $300 for misdemeanors, and provides that " in extraordinary circumstances, payment in excess of the limits stated herein may be made if the district court certifies

1. L. 1965, ch. 878.
2. N. Y. L. J., May 5, 1966, p. 1, col. 1.
3. U. S. Code, tit. 18, § 3006A subd. (d) (1964) [hereinafter referred to as CJA].

that such payment is necessary to provide fair compensation for protracted representation, and the amount of the excess payment is approved by the chief judge of the circuit." Thus, although section 722-b and the CJA differ slightly in several minor respects,[4] they are so substantially similar that, for all practical purposes, the language of the CJA regarding compensation of assigned counsel can be considered identical in purpose, meaning and effect with that of section 722-b as amplified by the plan of the Bar Associations.

Since the legislative history of section 722-b is sparse, and there appear to be no State decisions delineating the "extraordinary circumstances" which must necessarily exist before an attorney may successfully apply for excess compensation, the legislative history of the cognate CJA and the decisions which have thus far been rendered upon applications for extra compensation under its provisions can appropriately be examined.

In providing for payment to counsel assigned to represent indigent defendants, Congress did not intend nor purport to compensate such attorneys to the full extent that attorneys are paid under the accepted criteria for determining the value of their services. In the original version passed by the House of Representatives, no recovery in excess of $500 could ever be allowed.[5] The Conference Report explained that an exception would be made for "protracted" representation in recognition of the many cases of "extremely long duration."[6] It was found that the proposed rates were "conceded by virtually every witness at the hearings to be below normal levels of compensation in legal practice"; nevertheless, the payment schedule was

---

4. The CJA and section 722-b differ slightly in that: (1) 722-b demands that an attorney submit a "sworn" statement specifying the time expended, the services rendered and expenses incurred — the CJA requires only a "written" statement of claim; (2) the CJA does not set forth any specific maximum compensation limits for the defense of a crime punishable by death as does section 722-b. In this regard, it is interesting to note that Governor Rockefeller vetoed a bill which would have allowed compensation up to $1,500 for the defense of such formerly capital crimes as murder in the first degree, kidnapping and treason. Although the Association of the Bar approved the bill as one "designed to fill an unintentional gap" resulting from the almost total abolition of capital punishment (Committee on Crim. Cts., Assn. of Bar of City of N. Y., 1966 Legis. Bull. No. 38) the Governor's veto was based in part on the existing statutory provision for excess compensation in "extraordinary circumstances". (Governor's Veto Message No. 30 [1966].)

5. H. R. 7457, 88th Cong., 2d Sess. (1964).

6. 2 U. S. Cong. & Adm. News 3002 (1964).

'' widely supported as a reasonable basis upon which lawyers could carry out their profession's responsibility to accept court appointments, without either personal profiteering or undue financial sacrifice.''[7]

Parenthetically, it should be noted that the prevailing view of State courts is that, in the absence of statutory provisions, assigned counsel are not entitled to any monetary compensation whatever.[8]

### *Criteria used by Federal courts in interpreting '' extraordinary circumstances ''*

The Federal judiciary has thus far acted in complete consonance with the purposes of the statute as shown in the foregoing legislative history. For example, the Report of the Committee to Implement the Criminal Justice Act of 1964 concluded: '' It should be emphasized that the responsibility of members of the bar to accept appointments and to serve in these cases is the same as it traditionally has been and that the passage of the Criminal Justice Act of 1964 in no way lessens the responsibility of members of the bar to accept those appointments. The payment of compensation to counsel under the Act will, in most cases, be something less than compensatory. Service of counsel by appointment under the Act will continue to require a substantial measure of dedication and public service.''[9]

With such a legislative background, the Federal courts have found it appropriate to allow excess compensation only where a case involves '' an extraordinarily lengthy trial, or, by reason of its intricacies or novelty, an extraordinary amount of time out of court *so that it would be highly unjust to limit the attorney's compensation to $500.*''[10] Likewise, excess recovery will not be approved unless the case can be classified as '' unusually '' long in duration.[11]

An extra award will not be made merely because the statutory maximum will not '' compensate '' an assigned attorney according to the prevailing '' private '' rates. Some degree of financial

---

7. *Id.,* pp. 2997–2998.

8. See *United States* v. *Dillon,* 346 F. 2d 633 (9th Cir., 1965); *State* v. *Superior Ct.,* 2 Ariz. App. 466 (1966).

9. 36 F. R. D. 277, 294 (1965); see, e.g., *United States* v. *Whitney,* 1965 Crim. Index No. 160 (S. D. N. Y.)

10. *United States* v. *Owens,* 256 F. Supp. 861, 863 (W.D. Pa., 1966) (emphasis added).

11. See *U. S.* v. *Whitney, supra.*

sacrifice is expected of those who undertake the defense of the indigent, and only when the maximum award would be so disproportionate, compared with the services rendered, as to be grossly insufficient will "extraordinary circumstances" or "protracted representation" warranting excess compensation be found.

The criteria applicable to the determination of the value of legal services were stated in *Matter of Burk* (6 A D 2d 429, 430 [1st Dept.]) as follows: "The relevant factors are the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, and the results achieved." (See, also, *Matter of Potts,* 213 App. Div. 59.) In the few reported cases under the CJA, only the time reasonably spent in court and in preparation has been considered in the computation of the assigned attorney's fee. (The nature and difficulty of the questions involved have been considered only insofar as they affect the time spent. Obviously, where more time was spent than the circumstances of the case warranted, compensation on an hourly rate would not be justified; the allowance of compensation is not a mere arithmetical computation.) The forms provided for under the CJA also indicate that the major (if not the only) concern is with time expended.[12]

For the sake of convenience and clarity, the following chart has been prepared to illustrate pertinent information contained in those recent Federal cases where applications have been made for excess compensation:

---

12. The form designed by the Committee to Implement the CJA requires that the attorney seeking compensation indicate only the time expended in the various subdivisions of the representation — time in open court, for research, etc. The language of the form used by the Trial Judge to certify excess compensation is as follows: "This is to certify that the attached claim in the amount of $ for compensation for representing                charged with           , a felony/misdemeanor, which is in excess of the limitation of $           contained in the Criminal Justice Act of 1964, represents fair compensation for protracted representation and, therefore, payment is necessary." (36 F. R. D. 307–309 [1965].)

| Case | Citation | Hours in Court | Hours in Preparation | Result |
|------|----------|----------------|----------------------|--------|
| *United States* v. *Kingston* a | (256 F. Supp. 859 [W.D. Pa., 1966]) | 46 | 136½ | Excess compensation not allowed |
| *United States* v. *Owens* | (256 F. Supp. 861 [W.D. Pa., 1966]) | 40 | 36 | Excess compensation not allowed |
| *United States* v. *Stith* | (261 F. Supp. 401 [D. D.C., 1966]) | 37 | 55½ | Excess compensation not allowed |
| *United States* v. *Thomas* | (261 F. Supp. 431 [D. D.C., 1966]) | 35 | 22¼ | Excess compensation not allowed |
| *United States* v. *Whitney* b | (1965 Crim. Index No. 160 [S.D. N.Y.]) | 34½ | 18 | Excess compensation not allowed |
| *United States* v. *Lowery* | (261 F. Supp. 396 [D. D.C., 1966]) | 27 | 44 | Excess compensation not allowed |
| *United States* v. *Rountree* | (254 F. Supp. 1009 [S.D. N.Y., 1966]) | 24½ | 58 | Excess compensation not allowed |
| *United States* v. *Moore* c | (258 F. Supp. 790 [D. D.C., 1966]) | 18 | 51 | Excess compensation not allowed |
| *United States* v. *Pope* d | (251 F. Supp. 234 [D. Neb., 1966]) | 269 | 570 | Excess compensation allowed |
| *United States* v. *Dodge* e | (260 F. Supp. 929 [S.D. N.Y., 1966]) | 113 | 48 | Excess compensation allowed |
| *United States* v. *Hanrahan* f | (260 F. Supp. 728 [D. D.C., 1966]) | 70 | 48 | Excess compensation allowed |

a The court found that 136½ hours of out of court preparation could constitute " protracted representation " in the normal case. Here, however, much research was duplicative — apparently the result of a change of venue.

b Computed at the prevailing rates, counsel's request exceeded the statutory limits by $193. The Court indicated that application for additional compensation should only be made when the trial or the services in total, or both, have required the expenditure of time *considerably* in excess of that required in the usual case. The court also found that a trial of 5 or 6 days is not so unusual as to be " extraordinary."

c The court indicated that the success or failure of counsel's efforts should not be a factor in computing compensation.

d In this case, defendant was indicted on six counts for bank robbery and murder. Two attorneys were appointed, and were awarded $6,390 and $3,345 respectively, representing the full statutory rate for the entire period of representation. The court found that a more solvent defendant would have paid between $15,000 and $25,000 for the services rendered.

e While the representation here was found to be " protracted," counsel was not compensated at the full statutory rates. Calculated at $15 per hour for time in court and $10 per hour for preparation, the award would have been over $2,000. Judge LUMBARD awarded only $1,800 — and did not give the basis for his arithmetic, stating only that " a payment in excess of the $500 limit fixed by the statute * * * is not necessarily to be computed at the maximum rates."

f The court stated that the unusual amount of time spent in court in the present case represented " protracted representation ", that the amount of compensation claimed by counsel and allowed by the trial court ($1,530) was " eminently reasonable " for the services rendered in this complex case, but reduced the allowance to $1,000 since the Act does not purport to provide full compensation. " I also recognize ", said the Court, " that those counsel who are most qualified by virtue of their experience and ability make the greatest financial sacrifices under this Act as they did before its passage."

The chart illustrates the factual disparity presently existing between cases where excess compensation is allowed and those where it is refused. An attorney who was in court for 70 hours and was engaged for 48 hours out of court recovered beyond the maximum award; an attorney who was in court only 46 hours, though he spent 136½ hours out of court, was not allowed an excess allowance. Apparently, '' protracted representation '' occurs only if it goes considerably beyond the duration of the '' usual '' trial for that type of crime in the particular jurisdiction.

*Criteria for determining excess compensation '' in extraordinary circumstances ''*

At the outset it must be emphasized that the dominant thought in section 722-b of the County Law is to gear the compensation of an attorney assigned to represent an indigent defendant to

the time spent on the case. It must be assumed that the Legislature, in providing for compensation on an hourly basis, intended that such a method for evaluating legal services was the most practical method for treating all assigned counsel upon an equal footing.

However, a question arises as to whether the provision of section 722-b which gives the trial court the power "in extraordinary circumstances" to fix compensation in excess of the statutory limits was intended to permit the court to consider other factors, apart from time spent, in reaching a conclusion as to "extraordinary circumstances."

Using the Federal cases as a guide, it would appear that the amount of time reasonably and necessarily spent should be the sole criterion in determining whether "extraordinary circumstances" have been demonstrated. Such a test commends itself for objective and facile judicial administration.

Of course, an award in excess of the maxima, based on "extraordinary circumstances," is not to be made solely because an attorney shows that the product of the number of hours claimed to have been spent multiplied by the $10 per hour spent out of court and $15 per hour in court exceeds the $300 and $500 limits. There should be a finding of "extraordinary circumstances" only if the court concludes from the facts that a denial of additional compensation would be grossly unjust. Even under such circumstances, counsel need not necessarily be awarded payment of the maximum per hour rates for the excess time spent.

Moreover, the type of crime involved should not *ipso facto* dictate the propriety of granting excess compensation. As hereinabove indicated, Governor Rockefeller recently vetoed a bill which would have increased the maximum limits of compensation for attorneys assigned for the defense of crimes formerly punishable by death. It must be assumed, however, that the more serious the crime the more time will necessarily have to be expended by defense counsel. Thus, in effect, at least up to the statutory limits, the nature of the crime indirectly influences the quantum of compensation to be paid on an hourly basis. In the present state of the statute law, therefore, "extraordinary circumstances" cannot be presumed merely from the seriousness of the crime charged, whether it be for murder in the first degree or any other crime.

In fact, the forms approved for section 722-b and for the CJA do not provide spaces for the type of crime involved. A sex offender or fourth offender can receive a sentence from one day

to life, and this is also the possible punishment for second degree murder. If representation for any of these crimes is so protracted as to be extraordinary, excess compensation should be granted. If the representation is not so protracted, the mere nature of the crime charged should not mandate extra payment.

Both the CJA and section 722-b provide for the payment of $10 per hour for preparation reasonably required. Neither these statutes, nor the plan of the Bar Associations, however, require particularized documentation of this time. The form provided for New York lawyers appointed under section 722-b, for example, requests only that the total number of hours of legal research be supplied. A better view is taken in the plan for the District Court of Maryland, promulgated under the CJA. That plan requires that "in listing the time required for legal research, the application shall state the nature of the legal problems."[13] This approach would put no premium on the ignorance or inexperience of counsel and would make it easier for the Trial Judge (or the Presiding Justice) to evaluate the "reasonableness" of at least part of the claim for out of court time. Such a requirement can and should be read into the present statutory language.

There is no provision in the law for judicial review of the allowances granted by a trial court so long as the compensation awarded does not exceed the statutory limits.[14] Only where compensation is allowed in excess of those limits must there be approval, disapproval or modification by the Presiding Justice of the appropriate Appellate Division.

It may be assumed that the trial court's familiarity with the case supplements the sparse information provided in the forms to permit a proper evaluation of the claims for compensation.

However, when additional compensation is awarded because of "extraordinary circumstances," it would seem that the Presiding Justice, before being called upon to exercise any meaningful review of an excess allowance, should be afforded more than just the scanty delineation of the hours claimed to have been spent in a particular case.

---

13. 36 F. R. D. 327, 336 (1965). See, also, Suggested Plan for the Southern District of California, 36 F. R. D. 350, 359 (1965). Even without reference to such provisions, a Federal District Court has closely scrutinized the time spent out of court in one case, finding much of it "duplicative." (*United States* v. *Kingston,* 256 F. Supp. 859, 861 [W. D. Pa., 1966].)

14. There is some measure of supervision, if not real review, under the requirement of the Bar Association plan [art. VI, § 3] that the clerk of the particular court forward all approved allowances to the Administrator who shall then forward them to the Comptroller for payment.

## Summary

The Presiding Justice is vested with complete discretion to approve, disapprove or modify any allowances in excess of the statutory limits because of '' extraordinary circumstances.'' The legislative history of section 722-b of the County Law, considered in conjunction with the history of, and the Federal decisions interpreting the cognate Federal Criminal Justice Act of 1964, seems to require the same interpretation for '' extraordinary circumstances '' as involving inordinate time necessarily and reasonably spent on a case. Since, therefore, the time *reasonably* spent should be the preponderating consideration in reviewing an allowance because of '' extraordinary circumstances,'' the Presiding Justice should not be called upon to approve any such allowance solely upon the basis of forms which show hours spent only. Whenever an assigned attorney seeks compensation in excess of the statutory limits because of '' extraordinary circumstances,'' a detailed affidavit should be submitted which shows not only the time spent in hours but also the nature of the crime charged, the disposition of the case, the manner in which the time was spent, the necessity therefor and any other facts which tend to demonstrate '' extraordinary circumstances.'' Only then can the Presiding Justice properly perform the duty imposed upon him under the statute to review such allowances.[15]

## DISPOSITION OF PRESENT APPLICATIONS

*People of the State of New York* v. *Nattie Perry* and *Wilbert Watson* (Sup. Ct., N. Y. County, 1st Dept.).

The present application for excess compensation was approved by the Trial Justice in the amount of $745, and includes disbursements of $25.

---

15. It is to be noted that the views herein expressed are equally applicable to cases involving the compensation of assigned counsel for an indigent defendant upon appeal, where counsel seeks compensation in excess of the limits provided for in section 722-b of the County Law because of "extraordinary circumstances". In *People* v. *Perecinsky,* the attorney was assigned by the Appellate Division, Second Judicial Department, to represent the indigent defendant on an appeal from an order denying without a hearing an application for *coram nobis* relief. In his voucher, the attorney claimed that he spent 5 hours in interviews and conferences, 3 for obtaining and reviewing records, and 75 for legal research and brief writing. After analysis of the brief and the nature of the issues involved on the appeal, the attorney was allowed $300 for his services, the statutory maximum fee. It may be noted further that the attorney's claim for reimbursement for expenses reasonably incurred (secretarial expenses for typing the brief) was disallowed as being part of the attorney's general office expense and overhead.

Although the voucher does not explicitly so indicate, inquiry discloses that the representation involved the defense of codefendants indicted for robbery in the first degree, grand larceny, and assault in the second degree. The defendants were convicted of petit larceny and assault in the second degree.

The attorney states that he spent 40 hours in open court and 12 hours in preparation. Additionally, his expenses amounted to $25. Of the 40 hours spent in open court, 34 are attributed to the trial and 6 hours are asserted as having been expended in obtaining 6 continuances (1 hour each).

As to the 34 hours of trial, Schedule A annexed to the voucher sets forth 10 hours for *voir dire* examination from March 23, 1966 through March 28, 1966. There is no indication as to what this *voir dire* examination involved. There is also included in the 34 hours a period of 7 hours during which the jury deliberated.

This particular application demonstrates the necessity for more detailed information if there is to be any proper review by the Presiding Justice of allowances exceeding the maximum as provided for in article 18-B of the County Law.

On its face, however, the application clearly is not one which commends itself to additional compensation because of "extraordinary circumstances."

In *United States* v. *Owens* (256 F. Supp. 861 [W. D. Pa., 1966]), an attorney spent 40 hours in open court and 36 hours in preparation, yet the court found that this was not " protracted representation ", nor was it so extraordinary as to warrant excess compensation.

It would seem that the same result should obtain in the present application; and the allowance is therefore modified to the extent of allowing $500, the statutory maximum fee for the defense of one or more felonies, and $25 for expenses.

*People of the State of New York* v. *Robert Williams* (Sup. Ct., Kings County, 2d Dept.).

The present application for excess compensation was approved by the Trial Justice in the amount of $840.

The representation involved the defense of a defendant indicted for the crime of murder in the first degree. The indictment was subsequently dismissed upon motion made by the attorney for the defendant to which the District Attorney consented.

The attorney states that he spent 4 hours in open court and 78 hours in preparation. Of the 4 hours spent in open court, 2

are attributed to arraignment and plea and 2 hours are asserted as having been expended in obtaining a continuance. As to the 78 hours attributed to preparation, 3 are asserted as having been expended in interviews with the client, 15 for legal research, 22 for interviews with witnesses and consultation with prosecuting officials, and 38 for reviewing the record of a prior trial of the defendant which had resulted in a mistrial.

The application is not one which commends itself to additional compensation because of '' extraordinary circumstances ''. The allowance is therefore modified to the extent of allowing $500, the statutory maximum fee for the defense of one or more felonies.