OPINION OF THE COURT
John Manning Regan, J.
By order to show cause dated August 21, 1984, returnable September 6, 1984, the petitioner seeks an “order of enforcement”, or “such other, further, and different relief as to the Court shall deem proper”, against the County of Monroe in respect to an award of counsel fees and disbursements in the sum of $993 which this court granted the petitioner on February 13, 1984.
Petitioner, attorney Byrnes, alleges that this court assigned him to represent one Cheryl Dettman on December 17, 1982, because she was an indigent defendant. The police had charged Dettman with obstructing governmental administration and resisting arrest. Moreover, because the Public Defender of Monroe County already represented a codefendant charged simultaneously with Ms. Dettman with similar offenses arising out of *701 the same transactional events (which codefendant representation had created an irreconcilable conflict of interests), the Public Defender’s office was disqualified from representing both defendants at the same time. This disqualification mandated the appointment of Byrnes as attorney for Ms. Dettman.
From the outset, the case presented both unusual and difficult circumstances. The events which produced the charges occurred in Ms. Dettman’s home. There was a forcible police entry, without a warrant, to arrest Ms. Dettman’s boyfriend who did not regularly reside in that home, but who was rumored to be there that night. There were allegations of police brutality, allegations of prior police misconduct toward others, and toward these defendants, and serious physical injuries, including a broken nose Ms. Dettman suffered at that time.
Pretrial discovery included extensive examination of the police department’s internal investigation unit, the securing of some, but not all, documents in some of the police personnel records, court enforcement of subpoenas, and hearings, in court, on the scope of such subpoenas, and, further, complex legal arguments under Civil Rights Law § 50-a.[1]
The trial occurred on October 23 and 24, 1983, and involved half a dozen witnesses, hospital records, and legal memoranda.
The defendant was acquitted on the charge of resisting arrest, but she was convicted of obstructing governmental administration.
Because of the defendant’s pregnancy and medical complications which evolved from that pregnancy, sentencing was delayed until February 7, 1984.
On February 9, 1984, petitioner Byrnes submitted to this court a six-page affidavit describing the details of his representation, and also submitted a preprinted voucher, directed to the County of Monroe, for payment of fees in the sum of $873 and of disbursements in the sum of $120, or a total sum of $993. These documents were submitted to this court in accordance with County Law § 722-b, the penultimate paragraph of which provides that this procedure shall be followed in respect to compensation and reimbursement for representation by assigned counsel. This court reviewed these documents, and, being satisfied with their accuracy, their reasonableness, and their necessity, *702 awarded petitioner his full $993 request. Admittedly, this sum was $493 more than County Law, article 18-B, § 722-b allows for the defense of a misdemeanant, save but for “extraordinary circumstances”. (See, County Law § 722-b.) This court found that, in this case, the extraordinary circumstances conditions had been met.
Notwithstanding this finding, the County of Monroe did not pay any of these vouchers, nor has it yet paid any of them. The order to show cause and petition referred to above has yielded the County’s explanation. In that response, the County has raised the following arguments and defenses:
(1) Rule 1022.12 of the Rules of the Appellate Division, Fourth Department (22 NYCRR), requires that the Supervising Judge of the Criminal Courts approve any request for compensation greater than that statutorily allowed under County Law § 722-b. The County alleges that petitioner Byrnes has not secured such approval, nor has he complied with the rule.
(2) Byrnes has not filed a notice of claim pursuant to County Law § 52.
(3) The proceeding herein requires a plenary lawsuit and cannot be prosecuted by an order to show cause.
The pleadings have thus framed an important substantive issue of law, to wit: Whether Appellate Division, Fourth Department, rule 1022.12 and County Law § 722-b can legally coexist. For it is obvious that the Fourth Department rule both requires, prior to payment, a form of administrative review of every “extraordinary circumstances” award of trial courts in respect to counsel assigned to indigent criminal defendants, and assumes an administrative authority to disallow such payment in the event of noncompliance with the rule, while the statute, itself, prima facie, invests the trial court with the authority to make such awards, and order such payments.
The statute says: “For representation on an appeal, compensation and reimbursement shall be fixed by the appellate court. For all other representation, compensation and reimbursement shall be fixed by the court where judgment of conviction or acquittal or order of dismissal was entered. In extraordinary circumstances the trial court may provide for compensation in excess of the foregoing limits and for payment of compensation and reimbursement for expenses before the completion of the representation.” (County Law § 722-b.)
The rule of the Appellate Division, Fourth Department, states:
*703 “(b) All vouchers submitted by attorneys, psychiatrists or physicians, pursuant to section 35 of the Judiciary Law, and section 722 (b) of the County Law in which the compensation sought exceeds the statutory limits shall be submitted to the judge or justice before whom the matter was heard and to the Supervising Judge of Criminal Courts of the appropriate judicial district for approval or modification. The attorney, psychiatrist or physician shall attach thereto an affidavit describing the unusual or extraordinary circumstances which warrant the additional fee. Time itself does not necessarily constitute an extraordinary circumstance.
“(c) A judge or justice approving such a fee, shall certify that the circumstances are unusual and extraordinary and that therefore a fee in excess of the statutory limit has been earned and the amount thereof. Such certification shall state circumstances, other than additional time, which justify the fee recommended. In the absence of either the attorney’s affidavit or the court’s certification, additional compensation shall not be allowed.” (22 NYCRR 1022.12 [b], [c].)
Petitioner Byrnes argues that the statute and the rule are contradictory, and that, therefore, the rule must fail. Byrnes does not deny he has not gotten the approval of the Supervising Judge of Criminal Courts for the Seventh Judicial District. His position is that such approval is both superfluous and illegal.
The County argues that the rule and the statute are compatible, not contradictory, and that Byrnes must comply with the rule, as well as the statute, and that failure to secure such approval is fatal to his claim.
A study of the legal history, meaning and intendment, both of the statute and of the rule, has, for these reasons, become necessary.
I. HISTORY OF THE STATUTE
a) Original enactment of County Law article 18-B
The Sixth Amendment “right to the assistance of counsel in a criminal case” reached its apex of maximum development in the early 1960’s. In 1963, the United States Supreme Court, in Gideon v Wainwright (372 US 335 [1963]) reversed Betts v Brady (316 US 455) and established the constitutional right of every criminal defendant to have the assistance of counsel.
In New York State, early in 1965, the Court of Appeals made clear, in People v Witenski (15 NY2d 392 [decided Apr. 22,1965]) that the constitutional right to the assistance of counsel meant that poor criminal defendants who could not afford to pay a *704 lawyer had the right to have the court assign counsel to them to assist them in their defense, even in misdemeanor cases in Special Sessions Court.
These cases prompted the then Attorney-General, Honorable Louis J. Lefkowitz, to sponsor legislation, for immediate passage and executive approval, to amend the County Law, and to add a new article 18-B, in order to accomplish the following purposes:
(1) To provide for the assignment of counsel to persons charged with crime who are unable to afford counsel;
(2) To provide for such assignment from the time that the accused person first' appears in court to be arraigned on the charge;
(3) To require counties to adopt a systematic plan for furnishing counsel no later than December 1, 1965; and
(4) To provide for compensation and reimbursement of assigned counsel. (See, Memorandum for the Governor, bill jacket to Assembly Intro No. 4786, July 1, 1965.)
Since this was part of the Attorney-General’s legislative program, and since the decision in Witenski had made time an urgent factor in enactment, there was but one committee hearing on the bill during the legislative session.[2] The bill, in final form, was favorably reported to the floors of both houses and passed by substantial margins.
What opposition to the bill that arose, came, not during this committee hearing, but during the sometimes 10-, sometimes 30-day period after passage, as the Governor deliberates whether he will sign the bill.[3] Most of the critical opposition, and most of the detailed analysis of the meaning and legislative intent of the bill, is contained in the bill jacket documents that the Governor considered during that period of time.
Not surprisingly, those bill jacket documents show that County governments were most vociferous in their objections, and most demanding in urging the Governor’s disapproval. The County Officers’ Association and various County legislative bodies protested vehemently. A universal complaint from all the counties was that there was no auditing procedure to control the cost of the law. On behalf of Westchester County, its Board of *705 Supervisors sent its resolution (No. 119-1965), together with an explanatory letter from the County Attorney, which letter makes the point precisely, and is exemplary of all the others:
“There is no provision in this bill for the audit of any claim for compensation by a county officer. We respectfully submit that the Courts do not have time to pass upon the claims which it will be called upon to approve * * *
“It is our view that the fixing of counsel fees by the court within the limitations set forth in this bill may turn out to be a form of patronage, by the courts, particularly that provision on page 4, lines 20 and 21, of the bill, which provides, ‘In extraordinary circumstances, the Court may provide for compensation in excess of the foregoing limits.’ The Court alone determines what is, ‘extraordinary circumstances’, and the Court alone determines the additional compensation.” (See, Letter to Hon. Sol Neil Corbin, counsel to Governor Nelson Rockefeller, from Westchester County Attorney Gordon Miller, June 30,1965; emphasis added.)
Almost all the other commentators to the Governor favored the bills. They included Bar Associations, the City of New York, the Judicial Conference, and the Temporary Commission on Revision of the Penal Law and Criminal Code. The Temporary Commission, in its indorsement of the bills, observed: “The new bill (p. 4 lines 16-20) clarifies the question of which Court has the duty of fixing the authorized compensation and reimbursement.”
Despite these protests from the counties and their articulation of these specific objections, Governor Rockefeller agreed with the supporters, and signed these bills on July 16, 1985.
b) Case law enhancement
No statute survives very long without undergoing the exegetic process of judicial construction. The statutory provisions of County Law article 18-B, and the particular provisions in respect to the fixing of counsel fees for representation of indigent defendants, did not escape this process.
The earliest leading case is People v Perry (27 AD2d 154 [1967]). Perry dealt with the very same question this case poses. Trial courts had awarded fees, in excess of the statutory maxima, to assigned counsel, and the Presiding Justices of the First and Second Departments authored a joint opinion establishing criteria and policy considerations in order to provide guidelines for “processing of similar applications in the future”. (See, 27 AD2d, at p 156.)
*706 The issues Perry presented were fundamentally different from the problem in this case, however, because the Perry court was analyzing a Bar Association plan for representation of indigent defendants authorized under County Law, article 18-B, § 722, and was not confronted with a Public Defender’s office, authorized under County Law article 18-A, and assigned private counsel, in conflict situations, as is the case at bar.
The pleadings herein do not allege any Bar Association plan as the source of the Appellate Division’s rule 1022.12. The source the county’s pleadings identify is Judiciary Law § 85. Nor is this court aware of any Monroe County Bar Association Plan, approved either by the Judicial Conference or by the State Administrator,[4] which would cover the appointment of counsel other than the Public Defender in a conflict of interest situation, nor which authorizes the Appellate Division, or any administrative judge, to review awards which trial courts have made in excess of the statutory maxima.
Accordingly, this case involves a County Law § 718 appointment of counsel, pursuant to an application by the Public Defender’s office itself to be relieved of the duty of representation, pro hac vice, on the grounds of conflict of interest.
Such cases as these come within County Law § 718 and awards of counsel fees and disbursements are governed by the final sentence in that section which says: “If such attorney is appointed, he shall serve without compensation, unless such compensation is otherwise provided by law.” Obviously, the subsequent County Law article 18-B does provide for such compensation, and this court is then returned to the provisions of article 18-B as the controlling legislation.
None of these points of law obtained in the Perry decision, and its holdings on the authority of the Appellate Division, or of an administrative judge, to review the awards of a trial court, which was a specific feature of the New York County Bar Association Plan, are, therefore, irrelevant.
Perry (supra) is helpful on one issue: i.e., the method of determining whether the “extraordinary circumstances” condition the statute has created has been satisfied. The method Perry has established is that State court judges can, and should, use Federal decisions under the Federal Criminal Justice Act of *707 1964[5] as a guide, and that “time spent” has both a quantitative and qualitative character. The Perry court prohibits “extraordinary circumstances” awards in excess of the statutory maxima merely because counsel is ignorant or inexperienced and consumes inordinate time on the case. “Time spent” must meet a quality, as well as a quantity, standard, and each hour must reasonably equate with the productive capabilities of a competent and experienced lawyer. (See, Matter of Crimi, 60 Misc 2d 144 [1969].)
Accordingly, following Perry (supra) this court, prior to making the award herein, consulted with Federal decisions, and, conformably to the guiding principles of both Perry and United States v Bailey (581 F2d 984 [DC Cir 1978]), decided that the representation of petitioner Byrnes in this case constituted “protracted representation” in relation to the prosecution of other misdemeanors of the same type. Further, this case also presented some complex collateral issues which were legally indispensable to a proper resolution of contested issues at the trial.
The Court of Appeals has provided some partial interpretation of section 722-b awards of counsel fees, on the very point of appellate judicial review of such awards. In Matter of Werfel v Agresta (36 NY2d 624 [1975]), that court held that awards within the statutory maxima are nonreviewable, by appeal, citing Matter of Fisher v Schenck (39 AD2d 813 [3d Dept 1972]), or by a CPLR article 78 proceeding. Judge Jones, in dissent, points out that the Perry decision allows appellate review of awards in excess of those maxima, but, again, the Werfel case involved a Bar Association plan in New York City, not a Public Defender.
Since this case concerns an award in excess of the statutory maxima, and since it does not involve a Bar Association plan, these particular rulings in Werfel (supra) are inapplicable.
c) Subsequent amendments to County Law § 722-b
There have been amendments to County Law § 722-b in 1966, 1973, 1974, 1975, 1977 and 1978.
On the question of counsel fee awards in extraordinary circumstances and who shall make them, the amendments of 1974 and 1978 are most pertinent. The original 1965 statute read: “In extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.” (See, L 1965, ch 878, §1.)
*708 In 1974 and 1978, the Legislature amended the original language to read as follows: “In extraordinary circumstances the trial court may provide for compensation in excess of the foregoing limits and for payment of compensation and reimbursement for expenses before the completion of the representation.” (See, L 1974, ch 566; L 1978, ch 700.)
The 1974 amendment added all the words after “limits”. The 1978 amendment added only the word, “trial” before the word “court”.
These amendments use words so simple and direct that neither study nor interpretation is possible. The words mean what they say. The trial court holds the legislative authority to provide for excess compensation beyond the statutory limits, without participation by anyone else, both during the trial and after its completion.
d) Conclusion from statutory history
The inescapable conclusion from this study of the history of the statute and its amendments, and court interpretations of its provisions, is that the trial court has the sole authority to provide for compensation and disbursements, in excess of the statutory limits, in all cases of extraordinary circumstances, and that no auditing agency, nor administrative overseer, may interfere with that authority.
II. HISTORY OF RULE 1022.12 OF THE APPELLATE DIVISION, FOURTH DEPARTMENT
a) Origins and evolution
On February 19,1970, the Appellate Division, Fourth Department, issued rule 1022.12 (22 NYCRR), which stated in part:
“vouchers submitted by attorneys, pursuant to * * * section 722-b of the County Law in which the compensation sought exceeds the statutory limits shall be submitted to the court where the assignment was made and to the Appellate Division, Fourth Department, for approval or modification. The attorney shall attach thereto an affidavit describing the unusual or extraordinary circumstances which warrant the additional fee. Time itself does not necessarily constitute an extraordinary circumstance.
“(b) A magistrate, judge or justice of the assigning court, if he approves of such a fee, shall certify that the circumstances are unusual or extraordinary and that therefore a fee in excess of the statutory limit has been earned and the amount thereof. Such certification shall state the circumstances, other than additional time, which justify the fee recommended.
*709 “(c) In the absence of either the attorney’s affidavit or the court’s certification, additional compensation shall not be allowed.”
On December 16, 1974, the section was renumbered 1022.12, and subparagraphs (b) and (c) were consolidated; a new subparagraph (a) was added, prohibiting section 722-b assigned counsel from seeking additional or extra compensation — greater than the statute authorized — from the defendant or any other person.
In April 1983, the Appellate Division modified the rule to include psychiatrists’ and physicians’ fees under section 722-b, and stipulated a 90-day submission period, after the completion of the proceeding, for all vouchers under Judiciary Law § 35.
On May 5, 1983, the Appellate Division changed the rule to read that submissions of all vouchers were thereafter to be sent to: “the Supervising Judge of Criminal Courts of the appropriate judicial district for approval or modification” instead of to the Appellate Division (22 NYCRR 1022.12 [b]).
b) Case interpretation
There are no cases annotated under any of these rules.
c) Conclusion
These rules developed in such a manner as to displace all doubt that they were intended to substitute, in every case, the judgment of the reviewing authority specified in the rule for the judgment of the trial court. Where those judgments were congruent, the award was affirmed; where they differed, the judgment of the reviewing authority — not the judgment of the trial court — prevailed.
III. THE ISSUE OF RECONCILIATION V SUPREMACY
When a statute and a rule of court converge in apparent head-on contradiction — as this statute and rule most certainly do — the duty of any court is to attempt an interpretive reconciliation.
Nevertheless, such an attempt must not be a charade. The burden of decision is often onerous, but desultory pretenses do not lighten it, they pass it on while justice suffers meanwhile.
The statute is clear and inexorable. In cases of extraordinary circumstances, the Legislature invests the trial court with the duty and the authority to “provide for compensation in excess of the foregoing limits”. One of the most ancient and respected maxims of the law: “Inclusio unius est exclusio alterius”[6] (11 Coke 586; Black’s Law Dictionary 906 [4th ed 1951]), as well as *710 common sense, compels the observation that the certain designation of the trial court is the absolute exclusion of any other court; thus, the certain inclusion of the trial court excludes the Appellate Division and all other nonincluded designees, such as the Administrative or Supervising Judge of the Criminal Courts for the Seventh Judicial District.
Therefore, reconciliation is not a viable option. The statute and the rule cannot coexist. The only issue is supremacy — i.e., which shall preponderate.
That is not to suggest, nor to infer, that this court contests the wisdom of the rule, nor the auditing economic sentinel it attempts to erect. Wisdom is not the issue. The issue is where does the lawful authority reside — regardless of wisdom — in the rule, or in the statute? And the answer depends on which power source is superior — that of the Legislature, or that of the Appellate Division.
The Court of Appeals has held that the power of the Appellate Division to make rules and regulations governing the administration of the courts extends to all such powers as the Appellate Division might exercise so long as “such powers would not be contradictory to existing law”. (Matter of Seidenberg v County Ct. of County of Rockland, 34 NY2d 499, 506 [1974].)
The NY Constitution, article VI, § 30 grants the Legislature power to alter and regulate judicial proceedings such as “it has heretofore exercised”, and grants all courts power to adopt regulations “consistent with the general practice and procedure as provided by statute or general rules”.
The legislative power is, therefore, superior in this situation as a statute of general State-wide procedure is in place.
Rule 1022.12 of the Appellate Division, Fourth Department, is not consistent with this State-wide procedure as provided by the statute, County Law § 722-b, and it is, as previously noted, contradictory to existing law. Accordingly, it is unconstitutional and void, and the petitioner Byrnes does not have to comply with it.
For the above reasons, the affirmative defenses set out in paragraphs one through eight of the County’s pleadings, which rely on rule 1022.12 of the Appellate Division as justification for nonpayment of petitioner’s vouchers, are dismissed.
This leaves the County but two additional defenses: (1) the absence of a notice of claim under County Law § 52, and (2) the absence of a plenary lawsuit.
*711 County Law § 52 applies, by its terms, to claims for torts, not claims in contract. Since petitioner’s claim is a contract by operation of law, no notice of claim under General Municipal Law § 50-e is required for a voucher under County Law § 722-b. This affirmative defense is likewise dismissed.
The statute, County Law § 722-b, does not specify the method by which an attorney may collect the monetary award the trial court has made in the event the County refuses to pay it. It merely fixes the County’s obligation to pay or, in the case of New York City, the City’s obligation to pay.
In Matter of Werfel v Agresta (36 NY2d 624, supra), the Court of Appeals announced: “compensation of counsel in criminal matters under sections 722 and 722-b of the County Law, and the plans adopted pursuant to statute do not, for purposes of review, fall within either civil or criminal proceedings as the practice statutes are structured. Fixing compensation for assigned counsel pursuant to statute is one of numerous responsibilities of courts and Judges. These responsibilities might be characterized as ‘administrative’. They are, however, internal to, and performed entirely within the context of, the judicial offices involved. They are not concerned with the performance of an adjudicative function or an administrative responsibility external to the management of the courts or the litigation in them.” (See, 36 NY2d, at p 626.)
Following that precedent, as I must, this court holds that, in the proceedings originally fixing petitioner Byrnes’ compensation, the County was not a necessary party, and was not entitled to notice, and is bound by this court’s prior determination.
This proceeding, however, is not to fix the compensation, it is to enforce it. And the dissenting Judge in Werfel (supra) keenly appreciated that difference. As to an order directing payment, the County is a necessary party and is entitled, as a matter of due process,[7] to adequate notice and to an opportunity to be heard. A proceeding for an order directing payment of a sum of money is a civil proceeding, and civil practice must be observed.
There is no express authority in County Law § 722-b for a civil proceeding to direct payment by order or judgment. However, when a law authorizes a court to determine compensation and disbursements, it also, by necessary implication, authorizes the court to use whatever means are reasonable and necessary to enforce that determination. Since enforcement of a monetary award is a civil proceeding, this court holds that the statute *712 authorizes a special proceeding against the County to enforce the award, if such process becomes necessary. Plenary actions would involve unreasonable delay and are not practical.
Under CPLR 403 a special proceeding may be commenced by order to show cause. Since, under Werfel (supra) no issues of fact (save but for fraud) are available to a County once the trial court has fixed the compensation due under County Law § 722-b, summary disposition under CPLR 409 (b) is indicated.
For these reasons, the court grants summary judgment to the petitioner against the County of Monroe in the sum of $993, together with interest at 9% from February 9, 1984 and $20 costs.
Execution on this judgment is stayed for 10 days from the time of service of notice of entry of said judgment on the County Attorney, unless a notice of appeal is filed under CPLR 5519 (a) (1), upon which event the statutory stay shall be in force.

. New York Civil Rights Law § 50-a was enacted originally by the Legislature in 1976. It established a privacy statute for police personnel records. The statute enforces the confidentiality of such records by requiring an in camera judicial scrutiny and hearing before the contents of any such records can be divulged to any party, except other governmental agencies.

. In May 1965, the Codes Committees of each house of the Legislature jointly held a public hearing on earlier drafts which were significantly different than the legislation as it was finally approved.

. See, NY Const, art IV, § 7. This was a 30-day bill, as the Legislature had adjourned its 1965 session, and sent the bill to the Governor for signature. In that event, the Governor must sign the bill within 30 days, or the bill does not become a law.

. County Law § 722 (1) authorizes adoption of a Public Defender system; § 722 (3) authorizes a Bar Association plan and requires the State Administrator to approve the plan; § 722 (4) authorizes a combination of any of these methods, but no such combination exists in Monroe County.

. 18 USC § 3006A.

. Latin for: “The inclusion of the one is the exclusion of the other.”

. E.g., fraudulent claims would not be entitled to payment, and the County could defend on such grounds.