84 N.Y.2d 601 (1994)
644 N.E.2d 1318
620 N.Y.S.2d 762
Daniel A. Yalango, an Incompetent, by Alan P. Goldberg, the Committee of His Property, Appellant, et al., Plaintiff,
v.
A. John Popp et al., Defendants; O'Connell and Aronowitz, P. C., Respondent.
Court of Appeals of the State of New York.
Argued October 26, 1994.
Decided December 8, 1994.
Herzog, Engstrom & Koplovitz, P. C., Albany (Frederick B. Galt of counsel), for appellant.
O'Connell and Aronowitz, Albany (Cornelius D. Murray of counsel), respondent pro se.
Chief Judge KAYE and Judges SIMONS, SMITH and CIPARICK concur with Judge TITONE; Judge LEVINE dissents in part in a separate opinion in which Judge BELLACOSA concurs.
*603 TITONE, J.
The sole issue presented on this appeal is whether respondent law firm has met the criteria for departing from the mandatory medical malpractice attorney's fees schedule set forth in Judiciary Law § 474-a (2) (see, Judiciary Law § 474-a [4]). Because respondent failed to demonstrate that its compensation under the schedule was inadequate, we reverse the Appellate Division order affirming the grant of additional compensation to respondent firm, and deny the application.
In June 1986, then 35-year-old plaintiff Daniel Yalango *604 underwent brain surgery at Massachusetts General Hospital for the removal of a colloid cyst discovered after he sought treatment for recurring nosebleeds. On July 7, 1986, less than one week after his discharge from Massachusetts General, plaintiff appeared at the emergency room of defendant Albany Medical Center Hospital complaining of headaches, nausea, and vomiting. Yalango was diagnosed as suffering from a postcraniotomy headache and discharged. Approximately three weeks later, on July 26, plaintiff was taken to defendant Ellis Hospital's emergency room in Schenectady, New York, with the same complaints, and was again discharged with a similar diagnosis. No computed tomography (CT) scan, magnetic resonance imaging or other radiologic diagnostic tests were performed during either of these two emergency room visits.
On July 27, Yalango, experiencing the same symptoms, reappeared at Albany Medical Center's emergency room, and was admitted for observation after a CT scan of the brain revealed the presence of bifrontal subdural hygromas  a collection of fluid on the brain. On the following day, upon a deterioration of his condition, emergency surgery was performed on Yalango by defendant A. John Popp, M.D., to relieve the pressure on the brain caused by the hygromas. Yalango ultimately sustained severe and permanent injuries, including brain damage, spastic quadriparesis and cortical blindness. He will require continuous skilled nursing care for the remainder of his life.
Respondent law firm O'Connell and Aronowitz was retained on a one-third contingent fee basis to commence a medical malpractice action against defendants Dr. Popp and the two upstate hospitals on behalf of plaintiff Yalango and his wife. The theory of the complaint was essentially that defendants failed to diagnose Yalango's condition of increased intracranial pressure in a proper and timely fashion, despite the presence of clear warning signs, and failed to conduct necessary diagnostic tests that would have revealed that condition in time to remedy it. According to plaintiffs' experts, Yalango's brain had shifted as a direct and proximate result of the increased intracranial pressure, and that shift caused Yalango's permanent injuries.
Prior to trial, the parties settled the claims against defendant Albany Medical Center for $1.3 million and against defendant Ellis Hospital for $630,000, and discontinued the *605 claim against defendant Dr. Popp with prejudice. On motions by respondent firm, Supreme Court approved both settlements in accordance with CPLR 1207.
Respondent simultaneously moved to increase its compensation from $338,731.74  the amount prescribed by the fee schedule contained in Judiciary Law § 474-a (2)  to $629,105.81  one third of the total recovery  on the ground that "extraordinary circumstances" were present in this case within the meaning of Judiciary Law § 474-a (4). Specifically, respondent contended that extraordinary circumstances existed because the two attorneys assigned to represent Yalango engaged in diligent and extensive efforts to master the complex and sophisticated medical issues involved, including spending hundreds of hours searching for, contacting, and meeting with numerous medical experts, both in and out of State, and conducting extensive depositions, totalling over 1,100 pages of transcript. Respondent firm also pointed to the fact that it had negotiated a favorable settlement, despite the possible existence of a previously undiagnosed and untreatable deep venous thrombosis that raised questions as to causation and a potential defense to liability. In sum, the firm alleged that it expended approximately 620 hours on the representation over a five-year period. Plaintiff-appellant Yalango, through his committee, opposed the increased fee application.
Supreme Court granted the application. The court found that extraordinary circumstances existed by virtue of the "difficult and complex" nature of the case, the multiple defendants, the difficulty in obtaining experts, and respondent firm's over-all "exhaustive and thorough review of all aspects of this case."
The Appellate Division affirmed, over a one-Justice dissent, holding that the trial court did not abuse its discretion in finding extraordinary circumstances here. The majority recognized that counsel's diligence led to a "successful pretrial settlement," despite the fact that the "difficulty in proving malpractice and proximate cause" rendered liability "tenuous against both hospitals" (199 AD2d 825, 826). The Court also rejected appellant's contention that, to comply with the mandates of Judiciary Law § 474-a (4), the court must "make a separate finding that the fee provided in the statutory schedule was inadequate" (id., at 826). The lone dissenter concluded that Supreme Court "misapprehended its role" under section 474-a (4) when it departed from the statutory schedule on a *606 finding that the case was extraordinary "in the sense of the number of witnesses, the complexity of the issues and the length of time taken * * * without regard to whether the schedule adequately compensates the attorneys" (id., at 827). The dissenting Justice would have reversed and remitted for a determination of "whether, in fact, extraordinary circumstances exist such that plaintiffs' attorneys will not be adequately compensated by the statutory fee schedule" (id., at 829). Because we conclude that respondent was adequately compensated under Judiciary Law § 474-a (2)'s schedule, we reverse and deny the application.
Judiciary Law § 474-a (2) establishes a mandatory fee schedule for attorneys who are retained to prosecute medical malpractice claims on a contingent fee basis.[1] The statutory schedule reduces the percentage of contingent compensation an attorney may receive as the sum of the plaintiff's recovery increases by specified increments. The percentages are calculated on the net sum recovered by the plaintiff after deducting full "expenses and disbursements for expert testimony and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action" (Judiciary Law § 474-a [3]). The "net sum" of the recovery is generously defined to include taxes and accrued interest (id.; see also, Reid v County of Nassau, 158 Misc 2d 26, 27).
The statutory formula for moderating attorney's fees in medical malpractice actions was enacted in 1976,[2] and amended in 1985, as part of a comprehensive State legislative initiative to reduce the spiraling medical malpractice premium rates fueled by enormous plaintiffs' verdicts and the high costs of litigation (see, Governor's Mem approving L 1976, *607 ch 955, 1976 McKinney's Session Laws of NY, at 2461; Mem of Executive Dept re L 1985, ch 294, 1985 McKinney's Session Laws of NY, at 3022). As part of this effort, the Legislature purposely reduced the percentages of the plaintiff's award to be allocated to attorneys as the amount of the award increases to ensure that "insurance premium dollars [are directed] primarily to the plaintiff's compensation" and "`to diminish the distortion of such high [attorney's fees] awards on the system'" (1985 McKinney's Session Laws of NY, at 3022-3023). The 1985 amendment to Judiciary Law § 474-a eliminated the one-third recovery as an option and relegated medical malpractice attorneys to the percentages contained in the fee schedule (L 1985, ch 294, § 15).
The Legislature also recognized, however, that on occasion the blanket fee levels could impose an extraordinary hardship on a plaintiff's attorney due to the particular "complexity or cost of the case" (1985 McKinney's Session Laws of NY, at 3023). To mitigate any such harsh effects, provision is made in Judiciary Law § 474-a (4)[3] for a plaintiff's attorney, who "believes in good faith that the fee schedule * * * because of extraordinary circumstances, will not give him [or her] adequate compensation" to apply to the trial court for an increased fee (emphasis added). "[I]f extraordinary circumstances are found," that section further authorizes the trial court, in its discretion, to "fix as reasonable compensation for legal services rendered an amount greater than that specified in the schedule"  provided that the greater compensation does not exceed the fee fixed by retainer agreement (Judiciary Law § 474-a [4]).
Inadequacy of the statutory fee schedule is the touchstone of the section 474-a (4) inquiry. The analysis must begin with the recognition that the section 474-a (2) scheduled fees are presumptively reasonable in all malpractice cases (see, Gair v Peck, 6 N.Y.2d 97, 113, 114, supra). To succeed on a request for excess compensation, then, the applicant bears the burden of rebutting that presumption by establishing that the fee schedule was inadequate to compensate counsel for the representation provided in the particular case (id.; Matter of Clinton, 157 Misc 2d 506, 510, supra). Thus, before departing from the statutory fee schedule, the court must make a *608 threshold finding that a departure from the fee schedule is justified because the authorized fee did not equitably compensate counsel. That a threshold showing of inadequacy must be made before relief based on extraordinary circumstances may be granted is self-evident from the plain and unequivocal language of the statute which expressly calls for that predicate. Thus, the fear expressed by Judge Levine that respondent could not have been aware of its obligation to put forth such proof is ill-founded (see, Levine, J., concurring-dissenting opn, at 611). Indeed, the requirement that such a foundational showing be made is a critical means of effectuating the Legislature's fee-limiting purpose of the statute.
The considerations which are relevant to an assessment of the adequacy of the section 474-a (2) fees are those related to the economics of the litigation and any concomitant financial hardship suffered by plaintiff's counsel. In other words, in determining whether extraordinary circumstances caused the fee to be inadequate, governing emphasis should be placed on whether the award  viewed as a whole or broken down to its hourly equivalent  equitably compensates counsel for "the amount of time reasonably and necessarily spent" in litigating the claim (People v Perry, 27 AD2d 154, 161). Under this formulation, the statutory fee may be inadequate, for example, where the case involves an extremely complicated procedural history or where plaintiff's counsel is required to expend an inordinate amount of time in pursuing the medical malpractice claim, thereby rendering the hourly rate of compensation exceptionally low or causing a loss of other income or some other financial detriment. Once that threshold showing is made, counsel must then justify a departure from the fee schedule by demonstrating that extraordinary circumstances caused the statutory fees to be unreasonable in the particular case.
Accordingly, to the extent that the courts below failed to consider whether the statutorily authorized fees in this case were inadequate to compensate counsel, they misapprehended their judicial function under the statute. We decline to remit the matter for a determination of the inadequacy of the statutory fees as the dissent below recommends, however, because in this case it is indisputable that the statutory fee was not inadequate.
Respondent was awarded $338,731.74 by application of the statutory percentages. Relying on respondent's estimation that *609 it expended 620 hours in representing plaintiff, respondent was compensated at a rate of almost $550 per hour. Respondent does not  nor could it  claim that this rate was somehow unjust. Additionally, based on that 620-hour figure, respondent's representation of plaintiff roughly averaged only 10 hours per month over a five-year period. Under these circumstances, respondent would be hard-pressed to establish that its services necessarily expended in pursuit of plaintiff's claim caused it to forego other practice or otherwise imposed some financial hardship (cf., Matter of Armani, 83 Misc 2d 252, 258; see also, People ex rel. Conn v Randolph, 35 Ill 2d 24, 27, 219 NE2d 337 [departure from fee schedule in indigent criminal defense case where attorneys were required to live away from home and to suspend their practices throughout year-long trial]). Indeed, the procedural history of this case never progressed beyond pretrial settlement negotiations, and counsel was not required to suspend its practice to attend to a protracted or all-consuming trial (cf., People v Perry, 27 AD2d 154, 158, supra). Accordingly, a remittal to Supreme Court, as Judge Levine ultimately recommends (see, Levine, J., concurring-dissenting opn, at 612), would constitute an inefficient use of judicial resources.
Because respondent has failed to demonstrate that the compensation in this case was inadequate, we need not address whether extraordinary circumstances existed in this case. We note, however, that factors such as the degree of diligence or success achieved by counsel, the essential factors relied upon by respondent here in seeking excess compensation, do not render a case extraordinary for purposes of the section 474-a (4) application (see, Matter of Clinton, 157 Misc 2d 506, 510, supra). The adjustment provision was not designed to reward successful results, nor diligent, thorough or even exhaustive preparation on behalf of a client (Reid v County of Nassau, 158 Misc 2d 26, 30, supra). Notably, the percentages contained in the fee schedule are set at levels intended to provide "`ample compensation for the best efforts and services of competent counsel'" (Gair v Peck, 6 N.Y.2d 97, 103, 112, supra [emphasis added] [quoting preamble to Rule 4]).[4] Further, attorneys in this State are not only encouraged *610 but are expected to zealously represent all clients (see, Code of Professional Responsibility DR 7-101 [22 NYCRR 1200.32]), and this Court has long recognized that correlating legal fees with "financial reward" rather than reasonableness "would be unprofessional" (Matter of Freeman, 34 N.Y.2d 1, 11, supra). In any event, the attorney's success is already accounted for under the graduated fee schedule which authorizes compensation based on a percentage of the recovery fund (see, Reid v County of Nassau, 158 Misc 2d 26, 30-31, supra).
Similarly, neither the technical complexity of the medical issues (cf., People v Perry, 27 AD2d 154, 161, supra) nor the existence of a dispute concerning proximate cause will render the case "extraordinary" (cf., McGrath v Irving, 24 AD2d 236, 238). Medical malpractice actions are by their nature complex, warranting extensive and sophisticated preparation. In fact, it is quite routine and ordinary in a medical malpractice action for causation to be in dispute or attributable to multiple defendants (see, Reid, 158 Misc 2d 26, 30, supra). Moreover, it is customary for parties to "produce the testimony of various experts and to be technically well prepared to develop that testimony or to cross-examine witnesses produced by the opposite side" (Morse v Palatine Ins. Co., 33 Misc 2d 205, 205-206). Finally, although counsel may engage in extensive travel in securing expert medical consultations, those costs do not constitute extraordinary circumstances impacting on the adequacy of the fee because they are reimbursable in full as disbursements for expert testimony or investigation in prosecuting the action (see, Judiciary Law § 474-a [3]).
In sum, respondent has made no showing that it suffered any economic detriment in attending to this case, which was settled prior to trial, such as a loss of income or practice or devotion of an inordinate amount of time, that would render application of the fee schedule here unjust. Thus, no departure from the mandatory fee schedule pursuant to Judiciary Law § 474-a (4)'s mitigating provisions is warranted.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the application of O'Connell and Aronowitz denied.
LEVINE, J. (concurring in part, dissenting in part).
I agree with the majority that the courts below erred in determining that a departure from the statutory fee schedule of Judiciary Law § 474-a (2) was justified here solely on the basis of the extraordinary circumstances they found in this malpractice *611 case, without determining whether those circumstances rendered inadequate the statutory fee that would otherwise apply. I, however, would remit to Supreme Court for further proceedings, including the submission of additional proof by the respondent law firm.
The issue of what circumstances in a medical malpractice case can justify a departure from the statutory fee schedule of Judiciary Law § 474-a (as amended, L 1985, ch 294, § 15) is one of first impression for this Court. The majority articulates new criteria for making that determination, essentially that, because of extraordinary circumstances, the fee schedule is inadequate to equitably compensate counsel due, for example, to a resulting unjust hourly rate of compensation or other established loss of income or other financial detriment occasioned by the representation. This test, which I believe is appropriate, is not readily discernable from lower court precedents. Nor is it easily derived from the legislative history, which only states in relevant part that malpractice plaintiffs' attorneys could obtain greater compensation than the schedule fees if "warranted because of the complexity or cost of the case" (Mem of Executive Dept, 1985 McKinney's Session Laws of NY, at 3023 [emphasis supplied]).
Thus, the respondent law firm can hardly be faulted for failing to provide in its application for additional fees the factual showing required to satisfy the exacting standard newly fashioned by this Court. Moreover, it is by no means certain that respondent cannot meet that standard. Although the majority focuses solely on its calculation of the resulting hourly fee in holding no inadequacy of compensation here, plaintiff's guardian ad litem, appointed sua sponte by Supreme Court, who made a thorough examination of the firm's litigation files and interviewed the lawyers who handled this case, opined in his report recommending approval of the firm's fee application that the firm spent substantially more time on the case than was recorded in its time sheets submitted to the Court. Further, the majority recognizes that, notwithstanding that application of the fee schedule results in a just hourly rate, the statutory compensation may nevertheless be deemed inadequate due to loss of other income or practice or other financial detriment resulting from counsel's devotion of his or her time and energies to the representation. Nor has the majority unequivocally rejected, on the issue of fee inadequacy, consideration of such factors as tenuous liability and exceptional skill of counsel which have traditionally been *612 considered fee relevant in other contexts (see, Matter of Freeman, 34 N.Y.2d 1, 9).
Although it may not ultimately succeed, I believe the respondent firm should have an opportunity to thoroughly develop and submit proof of these and other relevant facts, and perhaps even expert opinions, to support its application under the rigorous standard articulated by this Court today. Therefore, I respectfully dissent from so much of the majority's decision that dismisses respondent's application for additional fees, and would remit to Supreme Court for further proceedings on the firm's application.
Order reversed, etc.
NOTES
[1] The schedule limits attorney's fees by applying the following correlations: 30% of the first $250,000 of the sum recovered; 25% of the next $250,000 of the sum recovered; 20% of the next $500,000 of the sum recovered; 15% of the next $250,000 of the sum recovered; 10% of any amount over $1,250,000 of the sum recovered.
[2] As originally passed, Judiciary Law § 474-a substantially codified "Rule 4," a judicial rule adopted in 1957 by the Appellate Departments in response to the noted perception that contingent fees in malpractice actions provided plaintiffs' attorneys with a windfall and diverted compensation from the injured person (Mem of Executive Dept re L 1985, ch 294, 1985 McKinney's Session Laws of NY, at 3019, 3022; Matter of Clinton, 157 Misc 2d 506, 508). Rule 4 abolished the previously employed 50% contingency fee and limited contingent fees for attorneys in personal injury actions to an express schedule of fees or one third of any recovery (Gair v Peck, 6 N.Y.2d 97, 101, n, cert denied, appeal dismissed 361 US 374 [1960]).
[3] Judiciary Law § 474-a (4) substantially tracks the language of former Rule 4 (d) (see, Gair v Peck, 6 N.Y.2d 97, 101-102, n, supra [setting forth text of Rule 4]).
[4] In fact, the statutory fees were intentionally set at generous levels to preempt any claim that the low compensation might remove the incentive for the plaintiffs' Bar to accept medical malpractice cases (see, 1976 Report of Special Advisory Panel on Medical Malpractice, at 43; Letter from Superintendent of Ins, at 3, Bill Jacket, L 1976, ch 955).