[726 NYS2d 121]

Mario Contorino et al., Plaintiffs, v Florida OB/GYN Association, P. C., et al., Defendants. Clark, Gagliardi & Miller, P. C., Nonparty Appellant.

Second Department, June 4, 2001

68

*Clark, Gagliardi & Miller, P. C.,* White Plains (*Henry G. Miller* of counsel), nonparty appellant *pro se.*

**OPINION OF THE COURT**

S. MILLER, J.

The infant plaintiff, Kristin Contorino, was born with horrific injuries due to medical malpractice. As a result of the truly Herculean efforts of the law firm representing her, the nonparty appellant herein, she recovered a multi-million dollar settlement. With the consent of the plaintiff parents, and notwithstanding that the otherwise applicable contingent fee schedule prescribed by Judiciary Law § 474-a results in presumptively reasonable compensation, we conclude that this is one of those rare cases where the statutory fee does not constitute "adequate compensation." Accordingly, we grant the nonparty appellant's application for an increased fee.

**I**

As was established on the record of the prior appeal of the defendant Arden Hill Hospital (*see, Contorino v Florida Ob/ Gyn Assn.,* 259 AD2d 460), on February 15, 1990, hours before her birth, while *in utero* but after an otherwise unremarkable pregnancy, the infant plaintiff experienced a marked and extended decreased variability in her fetal heartbeat, followed by a sharp decrease in the fetal heart rate, which indicated fetal distress due to oxygen deprivation. The nurses monitoring the labor of the plaintiff Lisa Contorino, however, evidently failed to recognize the import of these signs and did not summon help. When her obstetrician, the defendant Sterling Chudow, arrived for what he anticipated would be an ordinary delivery, he was "shocked" to discover the nurses' omissions. After a further delay in obtaining an operating room, the infant plaintiff, deprived of adequate oxygen for nearly three hours, was born via cesarean section. She suffers from cerebral palsy and is cortically blind, hearing impaired, and incontinent, among other permanent and irreversible conditions.

The plaintiffs retained the law firm of Clark, Gagliardi & Miller, P. C. (hereinafter CG&M), the nonparty appellant herein, on August 30, 1990. Discovery was arduous and lasted over three years. CG&M served 11 bills of particulars and participated in 12 depositions. Three CG&M attorneys conducted a jury trial that lasted over five weeks and involved approximately 14 witnesses. The defendant Arden Hill Hospital

presented five expert witnesses, whose direct testimony required extensive review and preparation to enable trial counsel to engage in intelligible cross-examination. Additionally, the defendant physicians testified in their own defense and presented an expert pathologist. The plaintiffs' case likewise hinged on its expert proof.

The trial ended in a jury verdict in favor of the plaintiffs and against the defendant Arden Hill Hospital in the principal sum of $5,557,000. However, this was just the beginning, as extensive motion practice to set aside the verdict followed. Even the comparatively simple matter of entering judgment was contested and contentious, requiring a two-day collateral source hearing. CG&M prevailed at every turn.

Arden Hill Hospital appealed the judgment to this Court. CG&M attorneys defended that appeal. The record on appeal was approximately 4,000 pages long. The entire judgment was affirmed without reduction (*see, Contorino v Florida Ob/Gyn Assn., supra*). Further motion practice followed in the trial court and finally, after extensive negotiations, a structured settlement worth more than $4.25 million was reached and executed. A supplemental needs trust was also prepared. All told, CG&M attorneys expended an estimated 6,000 hours over more than eight years on this case.

## II

The initial retainer agreement executed by the plaintiff parents was a contingency retainer providing for CG&M to receive a fee representing one third of any recovery by suit or settlement. A further retainer executed August 5, 1992, provided for CG&M to be compensated in accordance with the sliding scale contingent fee schedule set forth in Judiciary Law § 474-a (2). That is, 30% of the first $250,000 recovered, 25% of the next $250,000 recovered, 20% of the next $500,000 recovered, 15% of the next $250,000 recovered, and 10% of any amount recovered above $1,250,000. The retainer further provided: "In the event extraordinary services are required [CG&M] may apply to the Court for greater compensation pursuant to the Judiciary Law."

Contending that the statutory sliding scale contingent fee schedule would not give it "adequate compensation due to the extraordinary circumstances of the case," CG&M applied, pursuant to Judiciary Law § 474-a (4), to increase the contingent fee. Acknowledging that its statutory fee pursuant to the sliding scale would be $568,915.45, CG&M nevertheless argued

that this amounted to an approximate hourly rate of compensation of only $94.82 and represented only 13.58% of the settlement amount. CG&M argued, with the enthusiastic support of the plaintiff parents, that it was entitled to an increased fee totalling $1 million, which represented an hourly rate of $166.67 or just under 24% of the settlement. The Supreme Court denied CG&M's application and denied its motion for leave to reargue and renew. CG&M now appeals and we reverse.

## III

As originally enacted, Judiciary Law § 474-a (L 1976, ch 955) set forth two distinct schedules governing the percentages of legal fees payable to counsel on contingency. Under "Schedule A," a sliding scale analogous to that in the present statute limited fees to 50% of the first $1,000 recovered, 40% of the next $2,000 recovered, 35% of the next $22,000 recovered, and 25% of any amount recovered in excess of $25,000. In the alternative, "Schedule B" permitted a contingency fee of a flat 33⅓% of the sum recovered (Judiciary Law § 474-a [2]).

As part of its medical malpractice reform package, in 1985 the Legislature amended Judiciary Law § 474-a (2) by adjusting the percentages and increasing the dollar amounts for purposes of the sliding scale theretofore known as Schedule A, and by eliminating Schedule B and its flat 33⅓% contingent fee. However, the Legislature left intact Judiciary Law § 474-a (4) which permits good faith applications for increased fees due to "extraordinary circumstances" which cause the fee schedule to result in inadequate compensation.

The scheduled fees provided in Judiciary Law § 474-a (2) result in "presumptively reasonable" compensation in medical malpractice cases (*Yalango v Popp,* 84 NY2d 601, 607). Thus, to prevail on a request for an increased fee, the applicant must rebut the presumption and make a threshold showing that under the circumstances of the case, the fee awarded pursuant to the schedule is inadequate. Once having done so, the applicant must demonstrate that due to the extraordinary circumstances of the case, the statutory fee is unreasonable (*see, Yalango v Popp, supra,* at 608). We are satisfied that CG&M made the requisite showings.

While the fee awarded to CG&M pursuant to the statutory schedule, $568,915.45, is by no means de minimis, we are persuaded that the fee is inadequate and does not equitably compensate counsel. As noted, CG&M spent an estimated 6,000

hours over more than eight years engaged in tenacious litigation. This case touched nearly every attorney in the firm, plus paralegals, support staff, consultants, and others. By devoting such an enormous amount of time and energy, not to mention such a large part of the firm's personnel, CG&M, of necessity, forfeited numerous other opportunities in pursuit of a just resolution of this case. Its statutory fee representing less than 15% of the settlement sum is clearly inadequate.

The extraordinary circumstances of this case are readily apparent. The remarkable time and effort expended by CG&M attorneys reaped a sizeable recovery for their clients. While Judiciary Law § 474-a (4) provides for additional compensation applications to be decided "without regard to the claimant's or plaintiff's consent," we cannot ignore the enthusiastic and grateful support of the plaintiff parents for this application. They appreciate their attorneys' "tireless and most diligent efforts."

The Supreme Court denied CG&M's application primarily upon its reading of *Yalango v Popp (supra)*. However, that case is easily distinguishable. In *Yalango*, the Court rejected the attorney's claim for additional compensation in a case that was settled before trial. This case was litigated for many years and the trial itself lasted nearly six weeks. The plaintiff's counsel in *Yalango* spent an estimated 620 hours on the case. CG&M attorneys devoted an estimated 6,000 hours to the instant matter.

Additionally, a portion of the fee is to be shared with another attorney who worked on this case for approximately two years before he referred the matter to CG&M. Thus, we are satisfied that the statutory fee of $568,915.45 is inadequate to compensate CG&M for the representation provided in this action. Accordingly, we agree that this is one of those rare cases presenting the requisite extraordinary circumstances (*see*, Judiciary Law § 474-a [4]) warranting the award of an increased fee, and the Supreme Court erred in denying CG&M's application.

The appeal from so much of the order entered February 7, 2000, as denied that branch of the appellant's motion which was for leave to reargue is dismissed, as no appeal lies from an order denying reargument. The order entered October 28, 1999, is reversed, on the law, the application is granted, and the appellant is awarded a fee of $1 million. The appeal from so much of the order entered February 7, 2000, as denied that branch of the appellant's motion which was for leave to renew is dismissed as academic.

KRAUSMAN, J. P., FRIEDMANN and FLORIO, JJ., concur.

Ordered that the appeal from so much of the order entered February 7, 2000, as denied that branch of the appellant's motion which was for leave to reargue is dismissed, without costs or disbursements, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order entered October 28, 1999, is reversed, on the law, without costs or disbursements, the application is granted, and the appellant is awarded a fee of $1 million; and it is further,

Ordered that the appeal from so much of the order entered February 7, 2000, as denied that branch of the appellant's motion which was for leave to renew is dismissed, without costs or disbursements, as academic.